THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANTANU DAS, | ) |
|                 *Plaintiff*, | ) No. 22 C 6988 |
| v. | ) Judge Virginia M. Kendall |
| TATA CONSULTANCY SERVICES, LTD., and AMIT BAJAJ, | ) |
|                 *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

While Plaintiff Santanu Das worked as a salesperson for Defendant Tata Consultancy Services, he received an incentive plan each year. The plans included formulas for the calculation of bonuses based on his sales. The plans also disclaimed the existence of a contract and stated that any bonuses were subject to Tata's sole discretion. For three consecutive years, Tata failed to pay Das bonuses according to the incentive plans' formulas. Das alleges violations of the Illinois Wage Payment and Collection Act (IWPCA) (Counts I & III) and unjust enrichment (Count II). Defendants move to dismiss all counts. (Dkt. 11). For the reasons below, Defendants' motion to dismiss is granted.

## BACKGROUND

Unless otherwise noted, the following factual allegations are taken from Das's Complaint (Dkt. 1) and are assumed true for purposes of the Defendants' motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). Tata hired Das as a sales associate in September 2010. (Dkt. 1 ¶ 7). Das received a promotion to the role of regional leader in August 2020, his second promotion. (*Id.* at ¶ 8). Das always met or exceeded Tata's performance expectations. (Dkt. 1 ¶ 9). Every year, Tata issued incentive plans to its salespeople, which included formulas for

calculating bonuses. (*Id.* at ¶ 10). Tata's leaders told Das and other salespeople that they would receive bonuses according to plans' formulas. (*Id.*) Until 2021, Tata paid Das and others according to the plans. (*Id.*)

Three incentive plans are relevant to this case: (1) the fiscal year 2020 incentive plan; (2) the fiscal year 2021 "Sales SWAT Tribe" (SST) incentive plan; and (3) the fiscal year 2022 incentive plan. (*See* Dkts. 1-1, 1-2, 1-3). All three plans included language similar to the following: "TCS reserves the right to withdraw, and/or not renew, this Plan. . . . Payment[] under this Plan is subject to the company's discretion. It does not create a contract between you and TCS . . . ." (Dkt. 1-1 at 2–3; Dkt. 1-2 at 2; Dkt. 1-3 at 4). The 2020 and 2021 SST plans further stated:

> Eligibility of these funds is based on numerous factors, including but not limited to the success of the business in achieving its earning goals, as well as by the individual contribution of each employee to business goals, as determined by business management. This is not intended to make up for or add to an employee's regular rate of pay or compensation for meeting the minimum standards of the job position. . . .

(Dkt. 1-1 at 2; Dkt. 1-2 at 2).

The 2020 plan also included the following language:

> Any incentive bonus made to an individual under the Plan is made at the sole discretion of the geography head, TCS Global CFO, and TCS Global head of HR. It is at the sole and total discretion of management whether there is any bonus, the amount, timing, and whether individual employees are rewarded and such determination will be based on multiple variables including, but not limited to, the associate and the unit's contribution. It should not be assumed that past payments have established a pattern for future payments.

(Dkt. 1-1 at 2). The 2021 SST incentive plan and 2022 incentive plan each contained an almost identical paragraph. (*See* Dkt. 1-2 at 2; Dkt. 1-3 at 3).[1]

Notably, the 2022 plan also provided:

---

[1] Instead of the geography head, the 2021 SST incentive plan gave discretion to "the Corporate Vice President – Markets," and the 2022 incentive plan gave discretion to "the MMT Management." (Dkt. 1-2 at 2; Dkt. 1-3 at 3).

2

> Employees must be actively employed by TCS on the date when sales incentives are paid in order to be eligible for a sales incentive payment. Thus, employees who voluntarily terminate their employment . . . prior to the date when sales incentives are paid will not be eligible for any sales incentive under the Plan for that year.

(Dkt. 1-3 at 3).

Around March 2020, Defendant Amit Bajaj became the president and head of sales for Tata's North America operations. (Dkt. 1 ¶ 11). One month later, Bajaj announced a 20% reduction to salespeople's bonuses for fiscal year 2020. (*Id.* at ¶ 12). Accordingly, Das received a bonus that was $21,820 less than the 2020 incentive plan would have provided. (*Id.*; *see* Dkt. 1-1). Around August 2020, Bajaj told Das that his bonus for 2021 would be based on the fiscal year 2021 "Sales SWAT Tribe" (SST) incentive plan, which provided for a maximum potential bonus of $432,040. (Dkt. 1 ¶ 13; Dkt. 1-2). Although Das exceeded the plan's highest target, he received a bonus of $97,000 in June 2021. (Dkt. 1 ¶¶ 14–15; *see* Dkt. 1-2). After receiving his 2021 bonus, Das asked Tata vice president Sanjeev Khanna and others why his bonus was lower than he expected, but he did not receive a satisfactory explanation. (Dkt. 1 ¶ 16).[2] Around April 2022, Tata demoted Das from regional leader to a regular sales role, replacing him with a less experienced employee. (*Id.* at ¶ 17).

Then, Tata gave Das its fiscal year 2022 incentive plan, which covered April 2022 through the end of March 2023. (*Id.* at ¶ 18; Dkt. 1-3). Between April and October 2022, Das made sales that would have resulted in a $123,000 bonus under the 2022 incentive plan. (Dkt. 1 ¶ 19). After Das resigned on October 13, 2022, Tata refused to pay him a bonus for 2022. (*Id.* at ¶ 20).

Das sued Defendants Tata and Bajaj on December 13, 2022, bringing three claims: (1) violation of the IWPCA (Count I); unjust enrichment (Count II); and retaliation under the IWPCA (Count III). (*Id.* at ¶¶ 21–29). Defendants move to dismiss for failure to state a claim. (Dkt. 11).

---

[2] Das's Complaint does not say who else he asked about his 2021 bonus besides Khanna. (*See* Dkt. 1 ¶ 16).

3

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.'" *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in his favor." *Id.* (citing *W. Bend. Mut. Ins.*, 844 F.3d at 675). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Kaminski*, 23 F.4th at 776 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

**I.      IWPCA Violation (Count I)**

The IWPCA "provide[s] employees with a cause of action against employers for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg. Sys., Inc.*, 817 N.E.2d 1105, 1107 (Ill. App. Ct. 2004)); 820 ILCS 115/3. The IWPCA defines "wages" as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." *Chagoya v. City of Chicago*, 992 F.3d

4

607, 624 (7th Cir. 2021) (quoting 820 ILCS 115/2). To state an IWPCA claim, an employee must show that his employer owes him compensation "pursuant to an employment agreement." *Id.* (quoting *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016)).

An "employment agreement need not be a formally negotiated contract" and "can be entirely implicit." *Id.* at 624–25 (quoting *Landers-Scelfo v. Corp. Off. Sys., Inc.*, 827 N.E.2d 1051, 1058–59 (Ill. App. Ct. 2005)). Nor must a plaintiff "plead all contract elements if [he] can plead facts showing mutual assent to terms that support the recovery." *Id.* at 624 (quoting *Landers*, 827 N.E.2d at 1059); *see also Bradley v. Village of University Park*, 59 F.4th 887, 903 (7th Cir. 2023) (explaining that an "agreement" under the IWPCA "requires only a manifestation of mutual assent . . . without the formalities and accompanying legal protections of a contract" (quoting *Catania v. Loc. 4250/5050 of the Commc'ns Workers of Am.*, 834 N.E.2d 966, 972 (Ill. App. Ct. 2005))). Yet, "the IWPCA holds the employer only to its promise under the employment agreement." *Chagoya*, 992 F.3d at 624 (citing *Enger*, 812 F.3d at 570). Further, the employer's promise must be "unequivocal" to be actionable. *See Schultze v. ABN AMRO, Inc.*, 83 N.E.3d 1053, 1059–60 (Ill. App. Ct. 2017).

The parties agree that the relevant incentive plans expressly disclaimed the existence of a contract. All three plans provided: "Payment[] under this Plan is subject to the company's discretion. It does not create a contract between you and TCS . . . ." (Dkt. 1-1 at 3; Dkt. 1-2 at 2; Dkt. 1-3 at 4). The plans each gave Tata "sole discretion and total discretion" to determine "whether there is any bonus, the amount, timing, and whether individual employees are rewarded." (Dkt. 1-1 at 2; Dkt. 1-2 at 2; Dkt. 1-3 at 3). Tata "reserve[d] the right to withdraw, and/or not renew" the plans. (Dkt. 1-1 at 2; Dkt. 1-2 at 2; Dkt. 1-3 at 4). The majority view in this district is that such disclaimers dissolve an IWPCA claim by negating mutual assent. *See, e.g.*, *Wilkinson v.*

5

*Acxiom Corp.*, 611 F. Supp. 3d 547, 556–57 (N.D. Ill. 2020); *Mooney v. Wyndham Worldwide Operations, Inc.*, 2014 WL 2959270, at *2 (N.D. Ill. July 1, 2014); *Brand v. Comcast Corp.*, 2013 WL 1499008, at *5 (N.D. Ill. Apr. 11, 2013); *Camilotes v. Resurrection Health Care Corp.*, 2012 WL 2905528, at *6 (N.D. Ill. July 16, 2012); *Harris v. Seyfarth Shaw LLP*, 2010 WL 3701322, at *2 (N.D. Ill. Sept. 9, 2010); *Skelton v. Am. Intercont'l Univ. Online*, 382 F. Supp. 2d 1068, 1075 (N.D. Ill. 2005). Finding these cases persuasive, the Court declines Das's invitation to part with the majority view. *Cf. Wharton v. Comcast Corp.*, 912 F. Supp. 2d 655, 658–60 (N.D. Ill. 2012).

Indeed, the disclaimers here show that Tata intended its incentive plans as mere guidelines—not as binding promises. *See Mooney*, 2014 WL 2959270, at *2 (citing *Brand*, 2012 WL 5845639, at *3). Das's allegation that Tata's leaders told him and other salespeople that they would receive bonuses according to the incentive plans does not establish an agreement separate from the plans. Although Tata had paid Das and other salespeople bonuses that aligned with past incentive plans' formulas, the relevant plans disclaimed any intent to be bound by past practice. Accordingly, Das's allegations do not permit a plausible inference that Tata made an "unequivocal promise" to pay any amount in bonuses. *See Schultze*, 830 N.E.3d at 1060.

Das leans on two Illinois appellate court decisions, *Schultze* and *Landers*, neither of which wins the day. (Dkt. 16 at 4–6). Das is correct that these opinions deserve "great weight." *See KR Enterprises, Inc. v. Zerteck, Inc.*, 999 F.3d 1044, 1051–52 (7th Cir. 2021) ("In deciding questions of state law, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." (internal quotation omitted)). Yet, both cases are distinguishable. In *Schultze*, the defendant sent the plaintiff "a letter notifying him that he was entitled to a bonus," which the appellate court deemed an "unequivocal promise" to

pay the plaintiff a bonus. *Schultze*, 83 N.E.3d at 1061. Here, by contrast, Tata gave Das incentive plans which disclaimed any promise to pay a bonus by reserving discretion. *Landers*, meanwhile, held that the defendant manifested its assent to an employment agreement setting a compensation formula by paying the plaintiff according to the formula. *Landers*, 827 N.E.2d at 1059–60. That agreement, unlike the incentive plans here, did not include any disclaimers or discretionary language. Thus, Das has failed to state a claim for an IWPCA violation.[3]

## II. IWPCA Retaliation (Count III)

Das's IWPCA retaliation claim also fails. The IWPCA permits recovery against an employer who has discharged an employee because he "has made a complaint to his employer . . . that he or she has not been paid in accordance with the provisions of [the] Act." *Simpson v. Saggezza, Inc.*, 2018 WL 3753431, at *4 (N.D. Ill. Aug. 8, 2018) (quoting 820 ILCS 115/14(c)). To state a claim for retaliation under the IWPCA, the plaintiff must plead that "he engaged in activity protected under the Act, that his employer took an adverse employment action against him, and a causal link exists between the two." *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, 2021 WL 1212796, at *8 (quoting *Sloan v. Am. Brain Tumor Assoc.*, 901 F.3d 891, 894 (7th Cir. 2018)).

Courts have found that an IWPCA retaliation claim fails without an underlying contract or agreement. *Wilkinson*, 611 F. Supp. 3d at 560 (collecting cases and noting the absence of "any appellate authority on point or any contrary authority"); *Reid v. Neighborhood Assistance Corp. of Am.*, 2013 WL 1087557, at *8 (N.D. Ill. Mar. 14, 2013) (finding an IWPCA retaliatory discharge claim requires evidence that an employer failed to pay an employee "in accordance with the provision of [the IWPCA]"—requiring an underlying contract or agreement (quoting 820 ILCS

---

[3] The Court need not resolve the parties' disagreement over whether compensation pursuant to the incentive plans was a bonus or commission. (*See* Dkt. 16 at 7). Nor does the Court reach Defendants' argument that Das resigned before the payout date under the 2022 plan. (*See* Dkt. 12 at 7–8).

115/14(c), and citing *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012))); *see also Williams v. Keystone Peer Rev. Org., Inc.*, 2019 WL 1177951, at *5 (C.D. Ill. Mar. 13, 2019). As explained, Das has not sufficiently pleaded the existence of an agreement to pay him according to the incentive plans' formulas. Nor has Das pointed to any authority suggesting that his IWPCA retaliation claim can proceed without an underlying agreement. Thus, Das's retaliation claim fails.

### III. Unjust Enrichment (Count II)

Finally, Illinois law does not recognize a "stand-alone claim for unjust enrichment." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 648 (7th Cir. 2019). As Das concedes, (Dkt. 16 at 10), the failure of his IWPCA claims dooms his unjust-enrichment claim.

### CONCLUSION

For the reasons above, Defendants' motion to dismiss [11] is granted. Counts I–III are dismissed without prejudice. If Das believes that he can file an amended complaint that comports with this opinion, he may do so on or before June 14, 2023. If no amended complaint is filed by that date, the dismissal will be with prejudice.

_____
Virginia M. Kendall
United States District Judge

Date: May 24, 2023