THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANTANU DAS, | ) )  ) |
| *Plaintiff*, | ) ) No. 25 C 6988 |
| v. | ) ) Chief Judge Virginia M. Kendall |
| TATA CONSULTANCY SERVICES, LTD. and AMIT BAJAJ, | ) ) ) ) |
| *Defendants*. | ) ) ) |

**OPINION AND ORDER**

Defendants Tata Consultancy Services Ltd. ("TCS") and Amit Bajaj, TCS's President for the Americas, move for a protective order pursuant to Federal Rule of Civil Procedure 26(c) barring Bajaj's deposition. (Dkt. 54). For the below reasons, the motion [54] is denied.

**BACKGROUND**

The facts of this case are set forth in this Court's prior orders on Defendants' motions to dismiss, and the Seventh Circuit's review of one of those decisions, so the Court does not rehash them in full here. *See Das v. Tata Consultancy Servs., Ltd.*, 2023 WL 3627714 (N.D. Ill. May 24, 2023); *Das v. Tata Consultancy Servs., Ltd.*, 2023 WL 7130423 (N.D. Ill. Oct. 30, 2023); *Das v. Tata Consultancy Servs., Ltd.*, 118 F.4th 903 (7th Cir. 2024). The lone claim remaining in this case arises under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.*

In early April 2020, just after the onset of COVID-19, TCS began workshopping a new sales initiative called the Sales Swat Tribe ("SST"), designed to capitalize on increased market demand brought on by the pandemic. (*See* Dkt. 57-2 at 1). TCS's President of the Americas, Amit Bajaj, was directly involved in SST's creation and launch. (*See generally id.*; Dkt. 57-3). He and

1

his team envisioned that SST would be comprised of approximately fifty of the company's best salespeople. (*Id.* at 9). Ultimately, Das was one of the salesmen invited to participate in the program. (*See* Dkt. 57 at 2). Shortly after SST's preliminary launch, Bajaj began communicating with representatives from TCS's human resources department and others about developing an "incentive model for SST." (Dkt. 57-3 at 4). In Bajaj's view, this model would need to incorporate "[g]oals & [m]easures," "translat[e] . . . performance into rewards," and "translat[e] rewards into financials." (*Id.* at 8). Eventually, Bajaj revealed an SST incentive structure to Das and the other program participants, through oral communications, a PowerPoint presentation, and a written Incentive Compensation Plan. (*See* Dkt. 23 ¶¶ 13–15). Das alleges that by March 2021, he had earned the "maximum incentive compensation of $432,040" under the SST plan. (*Id.* ¶ 18; Dkt. 57 at 3). But he only received a $97,000 bonus, leaving a "$335,040 deficit" that forms the basis of his Wage Act claim. (Dkt. 57 at 3).

Das received his $97,000 bonus in June 2021. (Dkt. 23 ¶ 18). That same month, Sujata Majumdar—TCS's North American Human Resources Lead, (Dkt. 54 at 5)—emailed Bajaj directly after she heard that "Santanu's payout ha[d] to be put on hold," and informed him that TCS's finance department would need Bajaj's direct email approval," presumably to process Das's bonus. (Dkt. 57-4). Das eventually began asking his supervisors about why he had received a bonus that was so much lower than expected. (Dkt. 23 ¶ 20). In early 2022, Das requested Majumdar provide him with his "last 3 years plan letters, payout letters and TCS offer letter." (Dkt. 57-5). Majumdar forwarded Das's inquiries to Bajaj and one other individual. (*Id.*) She noted that Das said he needed the documents for tax reasons but that she had her doubts. (*Id.*)

2

In May of this year, Das noticed Bajaj's deposition. (Dkt. 57 at 4). TCS has moved to prohibit that deposition from going forward under the so-called "apex doctrine." (*See* Dkt. 54). Fact discovery is set to close on November 5, 2025.

## LEGAL STANDARD

The Supreme Court has long established that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Under Rule 26(c)(1), a court may issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Before issuing a protective order, the Court must independently determine whether "good cause" exists. *See, e.g.*, *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The burden to show good cause for a protective order is upon the party seeking the order. *See Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).

Here, TCS seeks a protective order under Fed. R. Civ. P. 26(c)(1)(A), prohibiting Das from taking Bajaj's deposition. TCS invokes the "apex doctrine," upon which courts occasionally rely to protect high-level executives from potentially harassing discovery procedures. *See Little v. JB Pritzker for Governor*, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020). Three considerations are often at play: (1) whether the proposed deponent has any unique or first-hand knowledge of the underlying facts forming the basis of the dispute; (2) whether the requested information could be obtained via other discovery means or through a subordinate witness; and (3) the level of hardship sitting for a deposition would impose considering the proposed deponent's other job duties. *See Fleury v. Union Pac. R.R. Co.*, 2024 WL 1791739, at *1 (N.D. Ill. Apr. 23, 2024). But these are mere considerations that inform the court's ordinary Rule 26(c) analysis. The apex doctrine "is not

3

an ironclad rule, but bespeaks sensitivity to the risk that very valuable executive time would be wasted where the officer has no real information." 8A Charles Alan Wright, Arther R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2036 n.7 (3d ed. 2010); *see also Fleury*, 2024 WL 1791739, at *1. Even considering the sensitivities and potential for harassment surrounding executive depositions, the burden remains on the party seeking the protective order to "present[] 'a particular and specific demonstration of fact' as to the need for that protection." *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). There is a "strong public policy in favor of disclosure of relevant materials," thus, completely prohibiting a deposition is considered an "extraordinary measure." *Id.*; *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

## DISCUSSION

TCS first argues that any knowledge Bajaj has about the SST plan, its implementation, and the payment of bonuses to program participants is high-level and cumulative of knowledge that Das could obtain from other sources. (*See* Dkt. 54 at 4–5). TCS contends that Mr. Bajaj is the "quintessential apex witness" because he does not have "unique, first-hand relevant information." (*Id.* at 4). The apex doctrine is chiefly concerned with preventing the depositions of executives who have "no real information." *See Lee v. City of Chicago*, 2021 2399999, at *2 (N.D. Ill. June 11, 2021). This is because apex witness depositions, in many circumstances, may be "intended to abuse, harass, or force settlements." Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose*, 41:1 Litig. 41, 42 (2014). Thus, high-ranking executives who have only heard a passing remark about the basis for a lawsuit will often be spared having to sit for a deposition. *See, e.g.*, *Little*, 2020 WL 868528, at *2 (barring Governor Pritzker's deposition in an employment-related

4

defamation case when Pritzker did not receive employment-related concerns via email, did not personally supervise the plaintiffs, and immediately walked away from a plaintiff when that plaintiff attempted to raise his employment concerns during a campaign event). Similarly, high-ranking corporate officers will not have to sit for a deposition just because they are copied on relevant emails or because their name appears on corporate letterhead. *See Nucap Indus.*, 2017 WL 6059770, at *3. On the other hand, where the evidence shows that an executive was "uniquely hands on" or "had a substantial role in the specific decisions at issue," they may have specific, relevant knowledge that weighs in favor of requiring their deposition. *Id.* (citation modified).

The evidence shows that Bajaj was not simply copied on emails about the SST program, and his knowledge of the underlying facts is not merely incidental. Das has pointed to many emails that exhibit Bajaj's hands-on role in the development and launch of the SST program. (*See generally* Dkt. 57-2). Bajaj created an internal instant messaging thread comprised of fewer than ten individuals to discuss the SST concept. (*Id.* at 1). He remained in close communication with a small number of TCS employees about the early development of the program. (*Id.* at 16–20). He personally emailed a relatively small number of TCS employees, inviting them to participate in SST. (*Id.* at 21–22). Eventually, he spearheaded discussions with HR about the SST incentive package that forms the basis of this dispute. (Dkt. 57-3). And Bajaj received personal updates from HR about Das's bonus payment and inquiries into his employment file. (Dkt. 57-4; Dkt. 57-5). In those emails, Das is referred to only by his first name, suggesting Bajaj had a certain level of familiarity with Das and his role in the SST. (*Id.*) This is not a case of a plaintiff seeking duplicative information from an executive without "particularized knowledge" relevant to the action. *See Murillo v. Kohl's Corp.*, 2016 WL 6090862, at *3 (E.D. Wis. Oct. 18, 2016). Rather it involves a specific corporate initiative over which Bajaj had direct supervision and control. And information

5

about how that initiative was conceptualized and implemented is directly relevant to Das's wage claim.

In response to these facts, TCS accuses Das of cherry picking just a few pages of communications from a 10,000-page document production. (Dkt. 59 at 6). But, regardless of how many other communications there may be, or documents showing other individuals' involvement in SST, the emails the Court has reviewed paint a clear picture of Bajaj as a key player in designing, implementing, and executing SST. That Bajaj was not the "sole[]" person who created the plan is insufficient to preclude his deposition. (*Id.*) It cannot be the case that an executive will be shielded from discovery obligations and depositions simply because a subordinate has some overlapping knowledge the facts relevant to the litigation. This is not what the apex doctrine seeks to ward off. While the Court recognizes that subjecting high-ranking executives to depositions creates a "potential for abuse and harassment," TCS and Bajaj have failed to demonstrate why they think Das seeks to depose Bajaj for any untoward purposes. *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012).

On the other side of the ledger, the availability of alternative discovery methods and the constraints on Bajaj's time as a high-ranking executive in a large multinational corporation weigh in Bajaj's favor. First, Das does not contest that he refused TCS's offer to depose the company's North American HR Lead, Sujata Majumdar, and North American Sales Lead, Ruchikar Dalela, both of whom have relevant knowledge of Plaintiff's claim. (Dkt. 54 at 5). But it is not clear to the Court that the witnesses to whom TCS has pointed have all the SST-related information Das seeks. For example, neither Majumdar nor Dalela are copied on several of the communications that Bajaj sent during the early stages of SST's development. (*See* Dkt. 57-2 at 1, 16–18). And those individuals cannot testify to Bajaj's personal thought process on the creation of the program and

6

his involvement in payout decisions in 2022. Lastly, the Court is aware that Bajaj has a busy schedule—but busyness carries little weight on its own. This is especially true in the absence of an affidavit from Bajaj detailing why sitting for a deposition would be so costly for him and/or TCS. *See Sanstrom v. Rosa*, 1996 WL 469589, at *4 (S.D.N.Y. 1996). Moreover, "a plumber or a small business owner or a stay-at-home parent would be hit much harder having to lose an entire day of their life answering attorneys' questions than a CEO would." *Fleury*, 2024 WL 1791739, at *1; *see* Iain D. Johnston, *Apex Witnesses Claim They Are Too Big to Depose*, 41:1 Litig. 41, 41 (2014) (noting between a single parent working two jobs, a CEO of a large corporation, and a police chief for a mid-sized city, all with relatively similar factual knowledge, "the most likely to be deposed is the single parent").

In balancing the "likelihood of oppression or harassment [against] the value of the inquiry in generating important information," the Court concludes that TCS and Bajaj have failed to meet their burden in demonstrating that good cause exists to prohibit Bajaj's deposition outright.[1] 8A Charles Alan Wright, Arther R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2036 n.7 (3d ed. 2010). Nonetheless, the Court exercises its discretion under Fed. R. Civ. P. 30(d) to limit the deposition to four hours, instead of the ordinary seven provided under the rules. This limitation takes into consideration the constraints on Bajaj's time along with Das's refusal to depose separate TCS witnesses who have relevant information about his claim. Das will have 45 days from the date of this order to depose Bajaj, and that deposition can proceed via video if more

---

[1] At the same time, the Court denies Das's request for sanctions under 28 U.S.C. § 1927. (Dkt. 57 at 6–8). "Vexatious-litigation sanctions under § 1927 require a showing of either subjective or objective bad faith*." 4SEMO.com Inc. v. S. Ill. Storm Shelters, Inc.*, 939 F.3d 905 (7th Cir. 2019). Das cannot demonstrate either. While unsuccessful, TCS and Bajaj's motion to compel had a sound basis in law and fact. Indeed, some of the apex doctrine factors support their position. Sanctions, which must be imposed sparingly, are not appropriate here. *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

convenient for the Defendants. The final fact discovery deadline is extended to Monday, December 22, 2025.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants TCS and Bajaj's Motion for Protective Order [54]. Plaintiff Das has forty-five days from the date of this order to depose Defendant Bajaj for no more than four hours.

_____
Virginia M. Kendall
United States District Judge

Date: November 4, 2025